UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
ISHANNA RUFF,

                    Plaintiff,

          -against-                              MEMORANDUM & ORDER
                                                 12-CV-6113(JS)(WDW)
COBA UNION CORRECTION OFFICERS
BENEFITS,

                    Defendant.
---------------------------------------X
APPEARANCES
For Plaintiff:      Ishanna Ruff, pro se
                    113 Melrose Avenue
                    Massapequa, NY 11758

For Defendant:      Howard Gary Wien, Esq.
                    Koehler & Isaacs, LLP
                    61 Broadway, 25th Floor
                    New York, NY 10006

SEYBERT, District Judge:

          Pro se plaintiff Ishanna Ruff ("Plaintiff") commenced
this action on December 10, 2012 against defendant Correction
Officers Benevolent Association s/h/a Coba Union Correction
Officers Benefits ("COBA" or "Defendant") asserting claims under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et
seq. ("Title VII").  Currently pending before the Court is
Defendant's motion to dismiss the Complaint.  For the following
reasons, Defendant's motion is GRANTED and Plaintiff's claims
are DISMISSED WITHOUT PREJUDICE and with leave to replead.

## I. General Background

Plaintiff is a Correction Officer with the New York City Department of Corrections, where she has worked since December 7, 2000. (Compl. Ex. Part 1 at 14[2].) The Complaint essentially alleges that Plaintiff's supervisors, Captain Kimara McNair ("McNair") and Assistant Deputy Warden Nina Powers ("Powers"), discriminated and retaliated against Plaintiff because she was friends with "C/O Woods," an officer with whom "Powers wanted to be sexually involved." (Compl. at 4.) Despite Plaintiff's communications with her union delegates regarding such discrimination, Plaintiff claims that Defendant failed to adequately represent her or act on these complaints and thus discriminated and retaliated against her in violation of Title VII. In the attachments to her Complaint, Plaintiff

---

[1] The following facts are taken from Plaintiff's Complaint and the documents attached thereto and are presumed to be true for the purposes of this Memorandum and Order.

[2] Plaintiff has provided various attachments to her Complaint, which have been docketed as "Exhibits - Part 1," "Exhibits - Part 2," and "Exhibits - Part 3." For ease of reference, page numbers within these exhibits refer to those provided by the Electronic Case Filing system.

The Court notes that Part 1 of Plaintiff's exhibits ends abruptly and appears to be somewhat out of sequence. Like Defendant, the Court has attempted to recite the facts as alleged in consecutive order.

provides a relatively detailed, albeit somewhat difficult to decipher, account of events.

More specifically, she alleges that in 2001, Plaintiff agreed to work directly with McNair at the voter registration post of the Anna M. Kross Center ("AMKC"). (Compl. Ex. Part 1 at 16, 18.) Plaintiff and McNair worked together without incident until an individual, whom Plaintiff identifies as "C/O Graham," returned from vacation. (Compl. Ex. Part 1 at 18.) McNair assigned Graham to the visitor registration post and Powers subsequently expressed that Plaintiff should no longer be assigned to that post as well. (Compl. Ex. Part 1 at 18.) According to Plaintiff, "after [that] incident, [she] was constantly denied over[-]time [and] being sent home by Capt. McNair." (Compl. Ex. Part 1 at 18.) Other officers, however, regularly received overtime. (Compl. Ex. Part 1 at 18.)

Plaintiff does not allege any additional incidents until January 21, 2010, when McNair yelled at Plaintiff to go home. (Compl. Ex. Part 1 at 19.) When Plaintiff asked why, McNair responded, "because I said so and I am cutting overtime." (Compl. Ex. Part 1 at 19.) Plaintiff discussed this matter with the tour commander, who advised her to submit a report the following day. (Compl. Ex. Part 1 at 20.) On January 22, 2010, Plaintiff contacted her union delegate "C/O McQueen" and

provided her report along with statements from three witnesses. (Compl. Ex. Part 1 at 19-20.)

On February 25, 2010, Plaintiff returned from a vacation only to learn that Powers had not approved her vacation switch. (Compl. Ex. Part 1 at 22.) According to Plaintiff, Powers had a "common practice" of denying Plaintiff's time-off requests. (Compl. Ex. Part 1 at 22-23.) Ultimately, however, "Warden Hourihan" approved Plaintiff's February 2010 vacation. (Compl. Ex. Part 1 at 22.) That same day, Powers "yell[ed] out" to Plaintiff, "where is your belt," even though Plaintiff had been holding her belt at the time. (Compl. Ex. Part 1 at 24.) As a result of that incident, Plaintiff informed her union delegate, "C/O Miller," that he should tell Powers to stop talking to Plaintiff in such a manner. (Compl. Ex. Part 1 at 24-25.) Powers overheard that conversation and "practically spitting" in Plaintiff's face, stated: "What did you say, who you talking to?" (Compl. Ex. Part 1 at 25.) Powers went on to tell Plaintiff that she could say and do whatever she wanted to Plaintiff. (Compl. Ex. Part 1 at 25.) Although Miller witnessed the entire display, he did nothing. (See Compl. Ex. Part 1 at 26; id. at 26 ("I felt betrayed because no one was helping me not even my union rep C/O Miller that I pay out of my pay check [sic] to represent me.").)

On March 6, 2010, Plaintiff called "311" to complain about McNair and Powers. (Compl. Ex. Part 1 at 32.) The result of that call is unclear, but Plaintiff then filed a report with a delegate named Maiello and filed a complaint with the Department of Corrections Equal Employment Opportunity Office ("DOC EEO"). (Compl. Ex. Part 1 at 32.) Patricia Gordon of the DOC EEO informed Plaintiff that this was not an EEO issue and declined an investigation because Plaintiff "told her [she] was going to go to federal EEO." (Compl. Ex. Part 1 at 32.)

On March 10, 2010, McNair issued Plaintiff a command discipline ("CD") for abandoning her post. (Compl. Ex. Part 1 at 21.) According to Plaintiff, this discipline stemmed from her failure to inform McNair that Plaintiff had momentarily left her post to use the restroom, even though McNair was at another jail at the time. (Compl. Ex. Part 1 at 22.) Miller similarly received a CD for abandoning his post. (Compl. Ex. Part 1 at 21-22.)

As best the Court can discern, Deputy Hill then held a hearing regarding Plaintiff's CD. (Compl. Ex. Part 1 at 27.) Plaintiff's usual union delegate, Miller, refused to participate at the hearing, and instead Correction Officer Velez represented her. (Compl. Ex. Part 1 at 27.) Deputy Hill penalized Plaintiff with the loss of eight hours of compensatory time. (Compl. Ex. Part 1 at 27.) Miller apparently received the same

penalty, despite the fact that, in addition to having abandoned his post, he also failed to sign in or out altogether. (Compl. Ex. Part 1 at 22.)

During this same general period of time, Plaintiff wrote a letter or report to Deputy Hill.[3] (Compl. Ex. Part 1 at 28.) On March 11, 2010, Plaintiff, Deputy Hill, and Miller met. (Compl. Ex. Part 1 at 28.) Plaintiff suggested that she be assigned a new post in order to avoid confrontation with McNair and Powers. (Compl. Ex. Part 1 at 28.) However, Plaintiff agreed to change posts only if she could work the "11 x 7" shift. (Compl. Ex. Part 1 at 28.) Deputy Hill expressed his surprise that Plaintiff had been experiencing problems and agreed to change her post. (Compl. Ex. Part 1 at 28.)

When Plaintiff reported to Correction Officer Fredricks to receive her new assignment, she learned that she would be working the "1045 x 1931" rotation. (Compl. Ex. Part 1 at 28.) According to Fredricks, this was the only rotation that Powers had stated was available. (Compl. Ex. Part 1 at 29.) Plaintiff refused to sign off on the rotation change, as it was not the shift to which she agreed. (Compl. Ex. Part 1 at 29.) She then notified Hill, who said he would take care of it. (Compl. Ex. Part 1 at 29.)

---

[3] It is unclear when Plaintiff wrote this letter or whether the hearing before Deputy Hill occurred before or after receipt of the letter.

Plaintiff thus completed the work day and continued to work in the visit area on that Thursday, Friday, and Saturday. (Compl. Ex. Part 1 at 29.) She did not go into work on Sunday due to a storm, and took her regularly scheduled days off on Monday and Tuesday. (Compl. Ex. Part 1 at 29.) When Plaintiff returned to work on Wednesday, her union delegate McQueen informed her that she should report for her new post. (Compl. Ex. Part 1 at 30.) Plaintiff expressed that her agreement to a new post was contingent on working the "11 x 7" rotation, and decided to discuss the matter with Correction Officer Hicks and Deputy Newton. (Compl. Ex. Part 1 at 30.) Deputy Newton informed Plaintiff that he could not change anything and that she would need to talk to Deputy Hill, despite the fact that Deputy Newton was in charge of the visit area and likely could have rectified the situation. (Compl. Ex. Part 1 at 30-31.)

Plaintiff left Deputy Newton's office and called the Department of Corrections' Health Management Division ("HMD"). (Compl. Ex. Part 1 at 31; Def.'s Br., Docket Entry 9-1, at 7.) At that point, Plaintiff was "completely stressed out" and wanted to leave work. (Compl. Ex. Part 1 at 31.) HMD informed Plaintiff that they required a captain's approval before providing leave. (Compl. Ex. Part 1 at 31.) Plaintiff sought, and received, Captain Georgie's approval and then reported to HMD, where she "cried" and "had to speak to a psych." (Compl.

Ex. Part 1 at 31.) According to Plaintiff, HMD was surprised that Miller, as her union delegate, did not drive Plaintiff to HMD or arrange for her transportation. (Compl. Ex. Part 1 at 12.)

Plaintiff ultimately obtained leave with pay for approximately a month and a half, returning to work on April 19, 2010 with medical monitoring. (Compl. Ex. Part 1 at 13, 31.) Upon her return, Plaintiff worked in the Rickers Island Juvenile Court ("RIJC"). (Def.'s Br. at 8.) Plaintiff discussed this assignment with Hill, who told her that she was assigned to RIJC because she did not have an assignment "on paper." (Compl. Ex. Part 1 at 31-32.) Plaintiff complained that there were others with less seniority who also did not have an assignment "on paper," but her union delegate McQueen merely responded "it is what it is." (Compl. Ex. Part 1 at 32.)

Subsequently, on April 28, 2010, Plaintiff received a second CD for allegedly calling Powers a "bitch." (Compl. Ex. Part 1 at 32.) Plaintiff maintains that these allegations are false and that she has not yet had a hearing on the matter. (Compl. Ex. Part 1 at 32.) However, Miller has apparently stated that Plaintiff did indeed use such language in referring to Powers. (Compl. Ex. Part 1 at 13.) Although it is unclear to whom Miller may have made this confession, Plaintiff asserts

that Miller should have defended her whether she was "right or wrong."  (Compl. Ex. Part 1 at 13.)

Plaintiff further alleges that when she attempted to discuss these issues with COBA's counsel, "the law firm told [her] they were unable to help [her] because they can't put charges on another correction officer against one another" or against Assistant Deputy Wardens and that she must seek outside help.[4]  (Compl. Ex. Part 1 at 6.)  According to Plaintiff, when she sought union representation or aid, Defendant did nothing and failed to forward her complaint "to the captains and ADW union reps [sic] in order for the issues not to get this far." (Compl. Ex. Part 1 at 8.)

## II. Plaintiff's Complaints

On May 11, 2010, after filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), "Captain Mayo" and "Captain Bryan" conducted an investigation.  (Compl. Ex. Part 1 at 33.)  On June 23, 2010, the EEOC sent Plaintiff a letter stating that "it does not appear that you were subjected to an adverse employment action motivated by discriminatory animus as defined by Commission guidelines and federal law." (Compl. Ex. Part 1 at 2.)

---

[4] It is unclear when Plaintiff reached out to counsel, although Defendant's brief suggests that this communication took place after May 11, 2010.  (See Def.'s Br. at 8.)

Plaintiff then filed a complaint with the New York State Division of Human Rights ("NYSDHR") on July 1, 2010 against Powers and McNair. (Compl. Ex. Part 2 at 11.) In that complaint, Plaintiff alleged that she was being discriminated against because of, inter alia, her lighter African-American skin color, her heterosexual orientation, her sex, and her "family status" of having children and being in a relationship. (Compl. Ex. Part 2 at 10.) She claimed that discriminatory and retaliatory acts included removal from her post and denial of days off, vacation switches, and overtime. (Compl. Ex. Part 2 at 9-10.)

The NYSDHR denied the complaint on April 6, 2012 but forwarded it to the EEOC. (Compl. Ex. Part 1 at 3-4.) On September 10, 2012, the EEOC dismissed Plaintiff's complaint and issued a right-to-sue letter. (Compl. Ex. Part 1 at 1.)

DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint on the grounds that Plaintiff has failed to sufficiently allege discrimination or retaliation under Title VII. The Court will first address the applicable standard of review before turning to Defendant's arguments more specifically.

I. Legal Standard

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by

"[t]wo working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679.  Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.; accord Harris, 572 F.3d at 72.

## II.  Plaintiff's Union Discrimination Claims

Defendant asserts that Plaintiff has failed to state a claim of discrimination because, inter alia, she has not sufficiently alleged any breach of the duty of fair representation ("DFR") nor do any of her allegations regarding Defendant sufficiently state a claim for Title VII discrimination.[5]  The Court agrees.

---

[5] Defendant initially notes that, to the extent that Plaintiff has previously raised claims of age, sexual orientation, and familial status discrimination, she has not preserved these claims nor pled them in her Complaint.  (Def.'s Br. at 12.)  The Court agrees that Plaintiff has alleged only discrimination and retaliation on the basis of her race, gender, and/or skin color

"Unions are liable for an employer's discrimination only where: (1) the union breached its duty of fair representation by allowing an alleged violation go unrepaired and (2) the union's actions were motivated by discriminatory animus."[6] <u>Trivedi v. N.Y.S. Unified Court Sys. Office of Court</u>

---

in violation of Title VII.  In response to the inquiry "[t]his action is brought for discrimination in employment pursuant to," Plaintiff placed an "X" next to Title VII only, leaving the space next to age discrimination blank.  (Compl. at 1.)  Nothing in the Complaint itself alleges or identifies as a basis of discrimination Plaintiff's sexual orientation or familial status.

In fact, when asked to identify the bases for discrimination, Plaintiff identified "color: complexion (light skin Black women)," "gender/sex," and "age: (now) 39."  (Compl. at 3.) Even construing Plaintiff's <u>pro se</u> Complaint liberally to raise a claim of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, as codified 29 U.S.C. §§ 621-634 ("ADEA"), Plaintiff's allegation that she was thirty-nine at the time she filed her Complaint is insufficient.  Under the ADEA, an employer may not discriminate against an employee because of her age if that employee is at least forty years of age.  <u>See</u> 29 U.S.C. §§ 623(a)(1), 631(a); <u>see also</u> <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 609-10, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) (noting that "Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.").  Thus, to the extent that Plaintiff's Complaint can be said to raise a claim of age discrimination, such claim is DISMISSED WITH PREJUDICE.

[6] As Defendant correctly asserts, some courts in this Circuit have also included the additional element that Defendant violated a collective bargaining agreement.  (Def.'s Br. at 11, 13 n.4.)  <u>See, e.g.</u>, <u>Nweke v. Prudential Ins. Co. of Am.</u>, 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998); <u>Kohlhausen v. SUNY Rockland Cmty. Coll.</u>, No. 10-CV-3168, 2011 WL 1404934, at *5 (S.D.N.Y. Feb. 9, 2011).  The Court need not address this issue, however, because even under the "more lenient test," <u>Kohlhausen</u>, 2011 WL

Admin., 818 F. Supp. 2d 712, 724 (S.D.N.Y. 2011); accord Owens v. N.Y.C. Dep't of Sanitation, No. 11-CV-8297, 2013 WL 150245, at *6 (S.D.N.Y. Jan. 15, 2013). "Breach occurs only when a union's conduct toward one of its members 'is arbitrary, discriminatory or in bad faith' or 'when [the union] causes an employer to discriminate against employees on arbitrary, hostile or bad faith grounds.'" Owens, 2013 WL 150245, at *6 (quoting Ramey v. Dist. 141 Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 277 (2d Cir. 2004)) (alteration in original).

Plaintiff alleges that Defendant breached the duty of fair representation in a number of ways. Specifically, the Court reads the Complaint to assert that: (1) Miller failed to intervene when Powers yelled at her on February 25, 2010; (2) Miller refused to represent Plaintiff at the hearing regarding her CD for abandoning her post; (3) Miller failed to provide Plaintiff with a ride to HMD on March 11, 2010; (4) Miller conceded that Plaintiff called Powers a "bitch"; (5) Defendant failed to have a hearing regarding her CD for allegedly calling Powers a "bitch"; (6) Defendant failed to forward Plaintiff's complaints about Powers and McNair to their union; (7) Defendant's counsel refused to lodge charges against a fellow

---

1404934, at *5, that the Court has identified, Plaintiff has failed to state a claim.

Correction Officer or Assistant Deputy Warden; and (8) Defendant's counsel has improperly represented the people about whom Plaintiff complains.

Many of these complaints can be disposed of quickly. As a general matter, merely negligent acts are insufficient to constitute a breach of the DFR. See McNair v. NYC Health & Hosp. Co., 160 F. Supp. 2d 601, 605 (S.D.N.Y. 2001). For example, Plaintiff's allegations that Miller failed to intervene when Powers yelled at her or to provide her with a ride to HMD constitute negligence at best. See Trivedi, 818 F. Supp. 2d at 741-42 (finding that allegations that the defendant union should have intervened when the plaintiffs were subjected to a proficiency exam were insufficient to state a claim against the union). In fact, it does not appear from Plaintiff's allegations that Miller was acting as a union delegate, as opposed to a co-worker, at the time that he refused to intervene. See Badlam v. Reynolds Metals Co., 46 F. Supp. 2d 187, 201-02 (N.D.N.Y. 1999) (noting that union liability extends only insofar as the individual in question was acting as a union steward and not as an individual employee). Plaintiff alleges simply that Miller did nothing in these situations, and while Plaintiff may have "felt betrayed because no one was helping [her]" (Compl. Ex. Part 1 at 26), such claims do not sufficiently allege a breach of the DFR.

Similarly, Plaintiff's claim that she has not yet had a hearing on her CD for allegedly calling Powers a bitch is insufficient. Plaintiff alleges solely that a hearing has not taken place without any additional factual allegations or details. (Compl. Ex. Part 1 at 32.) If anything, this again appears to assert negligence. In fact, at least some courts in this Circuit have gone so far as to hold that even tacit acquiescence in the employer's discriminatory acts--assuming that the lack of a hearing was due to discrimination--do not adequately assert a breach of the DFR absent an allegation of arbitrary, discriminatory, or bad faith conduct. See, e.g., Klaper v. Cypress Hills Cemetery, No. 10-CV-1811, 2012 WL 959403, at *12 (E.D.N.Y. Mar. 21, 2012) ("A union's tacit acquiescence or ratification certainly can serve as a basis for an employment discrimination claim, but only if the plaintiff sufficiently alleges that this acquiescence or ratification was 'arbitrary, discriminatory, or in bad faith'--that is, if the acquiescence or ratification establishes a breach of the union's DFR." (emphasis omitted)).

Moreover, "the Supreme Court has held that 'a union's actions are arbitrary only if, in the light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational.'" Mussafi v. Fishman, No. 12-CV-2071, 2012 WL

5473874, at *4 (S.D.N.Y. Nov. 12, 2012) (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)). Thus, "a union's duty of fair representation does not require it to pursue employees' complaints regardless of their merit," Jiggetts v. Local 32BJ, SEIU, No. 10-CV-9082, 2011 WL 4056312, at *6 (S.D.N.Y. Aug. 10, 2011), adopted by 2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011), and tactical decisions are given wide deference, see Mussafi, 2012 WL 5473874, at *5. Accordingly, that Miller decided not to represent Plaintiff at the hearing or conceded that Plaintiff insulted Powers in a particular manner also do not sufficiently state a claim against Defendant. Even though Miller did not represent Plaintiff at the hearing, Defendant provided Correction Officer Velez as her union delegate, whom Plaintiff does not allege provided inadequate representation. (Compl. Ex. Part 1 at 27.); see Mussafi, 2012 WL 5473874, at *5 ("[T]he plaintiff must allege sufficient facts to support a plausible claim that the Union's conduct 'seriously undermine[d] the arbitral process.'" (quoting Barr v. United Parcel Serv., Inc., 868 F.2d 36, 42 (2d Cir. 1989)) (alteration in original). In fact, Plaintiff alleges only that she overheard Miller say that he was too busy to attend the hearing. (Compl. Ex. Part 1 at 27.) Nothing in such a contention alleges that Miller or Defendant acted arbitrarily, discriminatorily, or in bad faith.

In addition, and contrary to Plaintiff's assertion (see Compl. Ex. Part 1 at 13), Miller was not necessarily obligated to defend Plaintiff "right or wrong." Cf. Vaca v. Sipes, 386 U.S. 171, 177, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967) (noting that a union's duty includes a duty to exercise its discretion "with complete good faith and honesty"). In fact, Plaintiff does not allege that Miller conceded that Plaintiff called Powers a bitch during the course of any union representation or as a union steward. See supra pp. 8-9.

As to Plaintiff's allegations regarding COBA's counsel--namely that counsel represents the individuals against whom Plaintiff has made complaints and that counsel advised Plaintiff that she would need outside help or otherwise failed to lodge complaints against Correction Officers or Assistant Deputy Wardens--again such claims fail. First, there is nothing inherently improper about a union representing employees on both sides of a particular complaint. See Durant v. Union Local 237, No. 12-CV-1166, 2013 WL 1232555, at *5 (E.D.N.Y. Mar. 4, 2013) (finding that the "plaintiff . . . failed to allege a plausible breach of the DFR based on the alleged conflicts of interest that arose from the Union's concurrent representation of plaintiff, the supervisors who 'made [disciplinary] charges' against her, and the attorney who prosecuted her at the disciplinary trial").

Second, while it is true that failure to file a grievable discrimination claim could constitute a basis for Title VII discrimination, even absent discriminatory animus, it is unclear exactly what Plaintiff is attempting to allege. See Agosto v. Corr. Officers Benevolent Ass'n, 107 F. Supp. 2d 294, 305 (S.D.N.Y. 2000) ("A union's deliberate refusal to file grievable discrimination claims violates Title VII."). In her attachments to the Complaint, Plaintiff asserts:

> When I was having issues of harassment I Ishanna Ruff went to my lawyers that my union dues pay for Koehler & Issacs. At which time the law firm told me they were unable to help me because they can't put charges on another Correction Officer against one another. As well as they can't put charges on Asst. Deputy Wardens. I was told I must seek outside assistance.

(Compl. Ex. Part 1 at 6.) It is wholly unclear what Plaintiff means by "put charges" on another officer. Though the Court has attempted to liberally construe Plaintiff's Complaint, absent some allegation that Plaintiff requested that Defendant file a grievance and Defendant breached its DFR in failing to pursue this request, Plaintiff's claim fails. See Durant, 2013 WL 1232555, at *5 n.4 ("To the extent that plaintiff might have a claim premised on the Union's representation to the EEOC that it 'only defends members against management and not members against each other to avoid conflict of interest,' the Complaint lacks sufficient factual details or context concerning this statement

for me to formulate a potential argument for plaintiff on this issue." (internal citation omitted)); <u>Pajooh v. Dep't of Sanitation City of N.Y.</u>, No. 11-CV-3116, 2012 WL 4465370, at *6 (S.D.N.Y. Sept. 27, 2012) (The plaintiff's claim failed where he did "not allege that he requested that Local 831 make any grievance on his behalf, nor (assuming he did make such a request), any facts which support the inference that the Union's failure to grieve was irrational, arbitrary, or the product of prohibited discrimination.").

Finally, as to Plaintiff's allegation that Defendant failed to forward her complaints to Powers and McNair's union, even if this or any of her other allegations constituted a potential breach of the DFR, Plaintiff has still failed to adequately allege that Defendant's actions were motivated by discriminatory animus. As Defendant correctly points out, Plaintiff at times characterizes her union delegates other than Miller as having been effective and that they "tried their best."[7] (Def.'s Br. at 14.) Additionally, the Complaint is wholly devoid of any allegation to suggest that Defendant's actions or inactions were the result of any discriminatory

---

[7] In fact, it is not wholly clear from Plaintiff's Complaint whether Powers and McNair violated Title VII. The Complaint itself, absent attachments, is bare, and essentially alleges that Powers and McNair did not like Plaintiff because they resented Plaintiff for being friends with Correction Officer Woods. (Compl. at 4.)

animus.  See Durant, 2013 WL 1232555, at *7 ("The Complaint is

barren of allegations suggesting that any of the Union's actions

or  decisions  concerning  plaintiff's  grievances  or  her

disciplinary  trial  were  motivated  by  her  race,  gender  or

disability."); Reyes v. Fairfield Props., 661 F. Supp. 2d 249,

269  (E.D.N.Y.  2009)  ("Even  liberally  construed,  plaintiffs'

complaint fails to allege any facts relating to race, other than

a  conclusory  statement  that  defendants  retaliated  and

discriminated against plaintiffs based on their being African-

American, which is insufficient under Iqbal.").[8]

---

[8] The Supreme Court has held that a plaintiff need not plead the
elements of a prima facie case in his or her complaint.
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992,
152 L. Ed. 2d 1 (2002) ("The prima facie case under McDonnell
Douglas . . . is an evidentiary standard, not a pleading
requirement.").  Rather, a complaint need only contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief," and "giv[ing] the defendant fair notice of
what the plaintiff's claim is and the grounds upon which it
rests."  Id. at 512 (quoting Fed. R. Civ. P. 8(a)(2)); Conley v.
Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))
(internal quotation marks omitted).  Thus, reconciling
Swierkiewicz with the standards set out in Iqbal and Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d
929 (2007), although "a complaint need not establish a prima
facie case of employment discrimination to survive a motion to
dismiss . . . , the claim must be facially plausible and must
give fair notice to the defendants of the basis for the claim."
Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210,
215 (S.D.N.Y. 2010) (internal quotation marks and citation
omitted); accord King v. U.S. Sec. Assocs., Inc., No. 11-CV-
4457, 2012 WL 4122025, at *4 (S.D.N.Y. Aug. 22, 2012), adopted
by 2012 WL 4327396 (S.D.N.Y. Sept. 18, 2012).  "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Iqbal, 556

Accordingly, Defendant's motion to dismiss Plaintiff's Title VII discrimination claims is GRANTED and such claims are DISMISSED WITHOUT PREJUDICE.

III.  <u>Plaintiff's Retaliation Claim</u>

Defendant also moves to dismiss Plaintiff's retaliation claims, arguing that Plaintiff has failed to adequately allege the elements of such a claim.  The Court agrees.

To state a claim for retaliation under Title VII, a plaintiff must plead facts demonstrating that:  "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action."  <u>Patane v. Clark</u>, 508 F.3d 106, 115 (2d Cir. 2007); <u>accord</u> <u>Kouakou v. Fideliscare N.Y.</u>, 920 F. Supp. 2d 391, 400 (S.D.N.Y. Dec. 17, 2012).  "As with discrimination claims, however, plaintiff is not required to plead facts sufficient to establish a prima facie case of Title VII retaliation in order to survive a Rule 12(b)(6) motion to dismiss."  <u>James v. Countrywide Fin. Corp.</u>, 849 F. Supp. 2d 296, 311 (E.D.N.Y. 2012); <u>see</u> <u>also</u> <u>Williams v. N.Y.C. Hous. Auth.</u>,

U.S. at 678; <u>accord</u> <u>Turkman v. Ashcroft</u>, 589 F.3d 542, 546 (2d Cir. 2009).  "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a <u>prima facie</u> case."  <u>King</u>, 2012 WL 4122025, at *5 (collecting cases).

458 F.3d 67, 72 (2d Cir. 2006) ("The _Swierkiewicz_ holding applies with equal force to any claim, including retaliation claims . . . , that the _McDonnell Douglas_ framework covers."). Rather, Plaintiff need only provide facts that give the defendant "fair notice of what the plaintiff's claim is and the grounds on which it rests." _Swierkiewicz_, 534 U.S. at 512.

The Court finds that Plaintiff has failed to satisfy even this lenient standard. Even assuming that Plaintiff participated in protected activity known to Defendant, she has not sufficiently alleged any adverse employment action. An adverse employment action for retaliation purposes is one that "a reasonable employee would have found [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." _Burlington Northern & Santa Fe Ry. v. White_, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (internal quotation marks omitted). "In addition, the adverse action must be caused by the union in order to be attributable to the union." _Danieu v. Teamsters Local 264_, No. 08-CV-0500, 2011 WL 1259839, at *7 (W.D.N.Y. Mar. 31, 2011) (citing _Thorn v. Amalgamated Transit Union_, 305 F.3d 826, 831 (8th Cir. 2002)). Preliminarily, it is not clear exactly what acts Plaintiff intends to assert were retaliatory in nature. _See_ _Kassner v. 2nd Ave. Deli. Inc._, 496 F.3d 229, 241-42 (2d

Cir. 2007) (dismissing the plaintiff's retaliation claim because "the complaint fails to identify any specific acts by defendants against [plaintiff] that are alleged to have been taken in retaliation for [plaintiff's] complaints or for her filing of discrimination charges"). In any event, any plausible claims appear to relate to Powers, McNair, or the Department of Corrections, not Defendant. See Danieu, 2011 WL 1259839, at *9 ("[W]ithout any facts showing Local 264 actively supported the retaliatory acts, it cannot be held liable for the retaliation.").

Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claim is GRANTED and such claim is DISMISSED WITHOUT PREJUDICE.

## IV. Leave to Replead

Although Plaintiff has not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No.

11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)).

Here, the Court finds that leave to replead is appropriate particularly because Plaintiff's Complaint lacks sufficient detail and, accordingly, GRANTS such relief.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE and with leave to file an Amended Complaint. If Plaintiff chooses, she must file an Amended Complaint on or before November 29, 2013. If she does not do so, the Complaint will be dismissed with prejudice and the case will be closed.

The Court notes that it has read Plaintiff's Complaint to raise claims pursuant solely to Title VII. To the extent that Plaintiff has alleged a claim pursuant to the ADEA, such claim is DISMISSED WITH PREJUDICE.

The Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     November  6 , 2013
           Central Islip, NY